**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA DEANGELIS,<br><br>    Plaintiff,<br><br>v.<br><br>CSI INTERNATIONAL, INC., ADRIANA PATROCINO and ROXANNA DANIEL, and JOHN DOES and ABC CORPS. 1-10 (fictitious names representing any unknown Defendants),<br><br>    Defendants. | Civil Action No. 23-03178 (JXN) (AME)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendants CSI International, Inc. ("CSI"), Adriana Pedroncino[1] and Roxanne Daniel's[2] (collectively "CSI" or "Defendants") Motion to Dismiss and Compel Arbitration (ECF No. 24). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

For the reasons set forth below, Defendants' motion to compel arbitration (ECF No. 24) is **DENIED without prejudice**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On May 5, 2023, Plaintiff filed a seven count Complaint in the Superior Court of New Jersey, Law Division, Essex County, alleging: perceived disability, hostile work environment, aiding and abetting in violation of the LAD, whistleblower retaliation and termination in violation

---

[1] Improperly plead as "Adriana Patrocinio."
[2] Improperly plead as "Roxanna Daniel."

1

of CEPA, retaliation and termination in violation of the Workers' Compensation Act, and wrongful termination in violation of *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980). (*See* Certification of Ronald V. Sgambati, Esq. "Sgambati Cert.", Ex. A, ECF No. 24-4).

Thereafter, on June 9, 2023, Defendants timely filed a Petition for Removal to Federal Court. (Notice of Removal, ECF No. 1).

On July 28, 2023, Defendants filed a Motion to Dismiss and Compel Arbitration. On March 20, 2024, the Court issued an Order denying Defendants' motion without prejudice and requested Defendants to refile their motion with the relevant standard of review for a motion to dismiss and compel arbitration.

On April 22, 2024, Defendants re-filed their motion to dismiss and compel arbitration (ECF No. 24) and brief including the relevant standard of review ("Defs.' Br.") (ECF No. 24-1). On May 7, 2024, Plaintiff filed opposition. ("Pls.' Br.") (ECF No. 26). On May 13, 2024, Defendants filed their reply. ("Defs.' Rep. Br.") (ECF No. 27). This matter is now ripe for consideration.

Plaintiff started her employment as a custodian for One Gateway Center in Newark, New Jersey on July 3, 2000. (Pls.' Br. at 2). On or about August 20, 2019, CSI took control of Allan Industries, Plaintiff's employer. (*Id.*). On August 22, 2019, Plaintiff attended an onboarding meeting and completed "new hire" paperwork, including an employment application, which included an acknowledgement of CSI's ADR policy. (*See id.*; Sgambati Cert., Exs. B-E).

Specifically, the language of the ADR policy states:

> **If I am employed I understand that I will be subject to CSI ADR policy, which will obligate me to resolve disputes related to my employment through mandatory mediation and arbitration rather than through state or federal administrative agencies or procedures and court litigation. A copy of this policy and the agreement to abide by same (in both English and Spanish) is available for my inspection upon request during normal business hours, both prior to my completion of this**

> **application and prior to my acceptance of any offer of
> employment which may be made. If I am offered and accept
> employment with CSI, I understand that this policy will be
> explained to me in more detail, a copy will be provided to me as
> part of the orientation process, and I will be asked, as a
> condition of such employment, to sign an agreement to abide by
> this policy.**

(Sgambati Cert., Ex. C) (emphasis in original).

## II.    STANDARD OF REVIEW

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "reflects a 'strong federal

policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey &

Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341

F.3d 256, 263 (3d Cir. 2003)). The FAA "enables judicial enforcement of a contract to arbitrate

after the court "hear[s] the parties" and is "satisfied that the making of the agreement for arbitration

... is not in issue[.]" *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (citing

§ 4). Thus, "[b]efore compelling arbitration pursuant to the FAA, a court must determine that: '(1)

a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the

agreement.'" *Dorset v. United Healthcare Servs., Inc.*, 2024 WL 3325977, at *2 (D.N.J. Jul. 8,

2024) (quoting *Kirleis*, 560 F.3d at 160); *see also Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99,

112 (3d Cir. 2000) (holding that "when the very existence of ... an [arbitration] agreement is

disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold

question of whether the arbitration agreement exists"). When performing this inquiry, the Court

applies "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at

160. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to

comply therewith is not in issue," a court must order the parties to proceed with arbitration. 9

U.S.C. § 4. But "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate

that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

In determining whether a valid arbitration agreement exists, a court must first determine whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771-72. (3d Cir. 2013).

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"5 *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC V. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question'" under a Rule 56 summary judgment standard. *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 776). "In short, discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement." *Young*, 119 F.4th at 320.

"An arbitration clause may be deemed 'apparent' even when a 'contract[ ], though not appended to the Complaint, [is] integral to, and referenced in, the Complaint.'" *Lawson v. City of Philadelphia*, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (alterations in original)). Consequently, if an

4

arbitration clause "appears in a contract relied upon in the Complaint" the Court may "resolve the motion to compel arbitration under a motion to dismiss standard[.]" *Sanford*, 618 F. App'x at 117–18.

## III.  **DISCUSSION**

Defendants assert the Court should decide their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the motion to dismiss standard. (*See* Defs.' Br. at 9-12). Plaintiff counters that the Court should review Defendants motion under Federal Rule of Civil Procedure 56, the summary judgment standard. (*See* Pls.' Br. 5-6). The proper standard is summary judgment.

Plaintiff's Complaint does not mention or rely upon the arbitration agreement; nor does Plaintiff attach the agreement as an exhibit. (*See generally* Compl.). Consequently, the Court must look to documents extraneous to the pleadings and the parties' respective declarations submitted to determine whether the parties have agreed to arbitrate this dispute. Given that the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, pursuant to *Guidotti* it would be inappropriate for the Court to apply a Rule 12(b)(6) standard to Defendants' motion. *See Guidotti*, 716 F.3d at 774; *Young*, 119 F.4th at 319 ("Here, the District Court correctly determined,. . .that the Rule 56 summary judgment standard applies to the claims at issue because [the] Complaint ma[de] no reference to the [] arbitration agreement; it d[id] not attach the agreement as an exhibit; and it d[id] not base the claims on the existence of the agreement"); *see also Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("The centerpiece of [*Guidotti's*] framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents") (citing *Guidotti*, 716 F.3d at 774-76); *Matczak v. Compass Grp. USA, Inc.,* No. 1:21-CV-20415, 2022 WL 557880, at *2 (D.N.J. Feb. 24, 2022); *Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3,

2019); *Kennedy v. LVNV Funding LLC*, 18-10695, 2019 WL 1789477, at *3 (D.N.J. Apr. 24, 2019); *Dotson v. Atlantic Credit & Finance, Inc.*, No. 19-01143, 2019 WL 5394837, at *1–2 (D.N.J. Oct. 22, 2019); *Tailor v. Midland Funding*, LLC, No. 18-11320, 2019 WL 943520, at *1 (D.N.J. Feb. 22, 2019); *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018); *Sauberman v. Avis Rent a Car Sys., LLC*, No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying a motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face an agreement to arbitrate); *Ross v. CACH, LLC*, No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015) (granting discovery under *Guidotti* where the plaintiff's complaint failed to reference or attach the purported arbitration agreement as an exhibit); *Hughes v. Kolaras*, No. 13-0057, 2013 WL 5797735, at *7 (D.N.J. Oct. 28, 2013).

### A. The Summary Judgment Standard

Having determined a summary judgment standard is applicable, the Court turns to whether the arbitration agreement is valid.

A motion to compel arbitration should be granted as a matter of law only where "there is no genuine dispute of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288-89, 289 n.10 (3d Cir. 2017) (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014)). The decision is effectively a "summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009).

i.    Arbitrability

The first issue before the Court is to determine whether the Court or an arbitrator must decide the issue of arbitrability. Arbitrability considers whether the dispute falls within the scope of the arbitration clause. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (2019). "Questions of arbitrability ... are presumed to be questions for judicial determination." *Quilloin v. Tenet HealthSys. Phila.*, 673 F.3d 221, 228 (3d Cir. 2012). However, the ultimate "question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Thus, under the FAA, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* "[P]arties may delegate threshold arbitrability questions to the arbitrator [as long as] the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 69 (citations omitted); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 & n.1 (2010); *MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020).

Where such delegation clauses are present, by "clear and unmistakable evidence[,]" the issue of arbitrability is properly determined by the arbitrator. *See Young*, 119 F.4th at 321; *Henry Schein*, 586 U.S. at 67-68 (2019) (quoting *Rent–A–Center*, 561 U.S. at 68-69 and citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)); *see also Blueprint Cap. Advisors, LLC v. Div. of Inv.*, 2023 WL 8866554, at *2 (3d Cir. Dec. 22, 2023); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018).

Importantly, however, even where a delegation clause exists, if the challenging party "resists arbitration on grounds that it never agreed to arbitrate at all" the court retains the "primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *See MZM Constr. Co.*, 974 F.3d at 401-02; *Sandvik*, 220

F.3d at 101, 106, 108 (expressly rejecting the argument that the severability doctrine applies when the threshold arbitrability issue is whether the parties mutually assented to the container contract); *Henry Schein*, 586 U.S. at 69 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Rent–A–Center*, 561 U.S. at 70 n.2 (drawing distinction between, on the one hand, questions about the validity or enforceability of an arbitration provision in an existing contract and, on the other hand, questions about whether an agreement "was ever concluded" in the first place); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (suggesting that questions about contract formation are different, and listed arbitrability issues that a "court must resolve" before referring a matter to arbitration, which "*always* include whether the [arbitration] clause was agreed to.") (emphasis added); *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir. 2003) ("[A] contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it."); *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "Indeed, it can hardly be said that contracting parties clearly and unmistakably agreed to have an arbitrator decide the existence of an arbitration agreement when one of the parties has put the existence of that very agreement in dispute." *MZM Constr. Co*, 974 F.3d at 401 (citation omitted).[3] "It is thus inevitable that a court will need to decide questions about the parties' mutual assent to the container contract to satisfy itself that an arbitration agreement exists. . . ." *Id.* at 400.

---

[3] *See also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (rejecting assertion that *Henry Schein* establishes a categorical rule that, when an agreement includes a delegation clause, "a court possesses no power to decide the arbitrability issue" and noting "*Henry Schein* 'did not change. . .the rule that courts must first decide whether an arbitration agreement exists at all.'" (citing *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019) and *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 n.3 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 856 (2020).

Here, the threshold arbitrability issue is a close question. Defendants have not pointed the Court to a delegation clause[4], and Plaintiff has not challenged any such delegation clause. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024) ("[A] party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole."). Nor has the Court, in reviewing CSI's ADR policy, found an explicit delegation clause akin to those found in our jurisprudence. *See, e.g., Rent–A–Center*, 561 U.S. at 68 ("[t]he Arbitrator. . .shall have exclusive authority to resolve any dispute relating to the. . .enforceability. . .of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *MZM Constr. Co*, 974 F.3d at 393 ("The Arbitrator shall have the authority to decide whether an Agreement exists, where that is in dispute."); *MacDonald*, 883 F.3d at 226 ("The Loan Agreement provides that an arbitrator should resolve threshold questions 'concerning the validity, enforceability, or scope of this loan or the Arbitration agreement.'").[5] However, CSI's ADR policy does reference the AAA rules[6], which "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," *See Chesapeake Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 763–64 (3d Cir. 2016) (alterations in original) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)).

The Court is mindful of the clear instruction that where a delegation clause exists by "clear and unmistakable evidence" the issue of arbitrability is properly determined by the arbitrator. *See,*

---

[4] A delegation clause is a clause in an arbitration agreement that assigns to the arbitrator the decision whether a dispute is subject to arbitration. *See Rent–A–Ctr.*, 561 U.S. at 68–69.

[5] Even if CSI's ADR policy contained such a delegation clause, whereas, here, Plaintiff "resists arbitration on grounds that [she] never agreed to arbitrate at all" the court retains the "primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *See MZM Constr. Co.*, 974 F.3d at 401-02; *Sandvik*, 220 F.3d at 101, 106, 108; *Henry Schein*, 586 U.S. at 69.

[6] CSI's ADR policy provides, "The arbitrator shall be bound by the provisions and procedures set forth in the Employment Arbitration Rules and Mediation Procedures of the AAA." (Sgambati Cert., Ex. D).

*e.g., Blueprint*, 2023 WL 8866554, at *2. Notwithstanding, whereas here, Plaintiff challenges the attainment of mutual assent and disputes the "very existence of an agreement[,]" the Court must first resolve the question of whether an arbitration agreement exists. *MZM Constr. Co.*, 974 F.3d at 402 ("[U]nder section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."); *Sandvik*, 220 F.3d at 109; *Granite Rock Co*, 561 U.S. at 297.

    ii.    <u>The Validity of the Arbitration Agreement</u>

       Having concluded the Court is the proper arbiter at this juncture, the Court next considers the validity of the Arbitration Agreement. The parties in this case disagree as to whether a valid agreement to arbitrate exists: Defendants contend a valid arbitration agreement exists; Plaintiff agreed to arbitrate her asserted claims by signing CSI's alternative dispute resolution ("ADR") policy and continuing her employment with CSI. (Defs.' Br. at 1, 11, 19). Defendants also contend the declarations of Rosa Andaluz and Rene Guerra establish that: (1) the arbitration agreement was in English at the time Plaintiff signed it and Plaintiff understood English; and (2) even if Plaintiff could not understand English, which she did, the Arbitration Agreement was read out loud in Spanish during the onboarding process. (Defs.' Br. at 11). Defendants further contend Jose Alveno explained the significance of the Arbitration Agreement to all new employees, including Plaintiff, during the onboarding session and all employees, including Plaintiff, had an opportunity to ask questions about the Arbitration Agreement during the onboarding session. (*Id.*).

       Plaintiff, on the other hand, disagrees that "there is no issue in the instant matter as to whether a valid agreement to arbitrate exists." (Pls.' Br. at 6). Plaintiff asserts she only speaks limited English and "and is not able to read English or documents in English." (*Id.*). Plaintiff also disputes the certifications of Rosa Andaluz and Rene Guerra and denies that the Arbitration

Agreement during the onboard meeting was read out loud in Spanish and denies that the significance of the documents was explained to Plaintiff and her fellow employees who were given an opportunity to ask questions. (*Id.*). Plaintiff further asserts there was no mutual assent because she could not read CSI's ADR policy. (Pls.' Br. at 7-8). Additionally, Plaintiff challenges the enforceability the Arbitration Agreement, arguing it is unconscionable because it contains a six-month limitation period to bring any claim. (Pls.' Br. at 10-11).

Here, viewing all facts in the light most favorable to Plaintiff, limited discovery is warranted.

Defendants submitted a declaration from CSI employee Rene Guerra which asserts: she attended the onboarding session with Plaintiff; that Jose Alveno and three women "were available, at all times, to explain the contents of each individual document in the packet, including the Arbitration Agreement[;]" that the documents were presented one at a time and explained; that the documents were read aloud in English and Spanish; that Plaintiff did not ask any questions about the documents or engaged the translators present; and that they did not feel rushed in completing the documents. (*See* Declaration of Rene Guerra, ¶¶ 1-11, ECF No. 26-1). Defendants also submitted the Declaration of Rosa E. Andaluz, another CSI employee who was present at the onboarding session. (*See* Declaration of Rosa E. Andaluz, "Andaluz Cert." ¶¶ 1-4, ECF No. 26-2). Additionally, Ms. Andaluz does "not recall [Plaintiff] working immediately after the onboarding session" and that there were several days between the onboarding and Plaintiff's first day of work. (Andaluz Cert. ¶ 5). Ms. Andaluz also declares she engaged in conversations with Plaintiff in English, observed Plaintiff speaking in English with other building tenants, "witnessed her reading" English, and observed Plaintiff "regularly speaking English" with her husband Thomas DeAngelis. (Id. at ¶¶ 7-11).

11

Plaintiff submitted a certification asserting she does not read or write English. (*See* Certification of Maria DeAngelis "Plaintiff's Cert.," Ex. A, ¶ 3, ECF No. 26-1). Plaintiff alleges she was "never given the opportunity to read" CSI's employment application. (*Id.*). Additionally, Plaintiff asserts "the documents were never translated to us from English to Spanish nor were we given an opportunity to have a family member or translator translate the documents. . ." (Plaintiff's Cert. ¶ 4). Plaintiff also *challenges her signature* on the employment application and that she does not "recall this particular document." (Plaintiff's Cert. ¶ 5). Plaintiff further asserts that "the company representative basically said, 'sign this now or you cannot work and you have to sign it right now because you have to start your shift.'" (Plaintiff's Cert. ¶ 7). Finally, Plaintiff states "it is my contention that I was never given this document and if I was[,] I [was] never given an opportunity to read it or have it translated for me. . ." (Plaintiff's Cert. ¶ 8).

Plaintiff's husband, Thomas DeAngelis, also submitted a certification, refuting Ms. Andaluz's certification, which asserted that she "observed Ms. De Angelis regularly speaking English when her husband is present and engaging in conversations with her husband in English" asserting that Ms. Andaluz's statement "is false and could not be further from the truth. I speak Spanish fluently. My wife speaks very rough English, but she is not able to read English or documents written in English, obviously this includes any type of legal documents written in English." (*See* Certification of Thomas DeAngelis "T. DeAngelis Cert.," Ex. C, ¶ 3, ECF No. 26-3). Mr. DeAngelis also states it would not be possible for Ms. Andaluz to have observed communications between him and Plaintiff because Plaintiff and Ms. Andaluz worked different shifts; he states Ms. Andaluz worked the day shift at CSI, while Mr. DeAngelis picked up Plaintiff at approximately 1:30 a.m. (T. DeAngelis Cert. ¶¶ 4-5).

These certifications demonstrate factual discovery is warranted because Plaintiff disputes the very validity of the Arbitration Agreement. *See Young*, 119 F.4th at 319 (noting in the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel."). Like in *Guidotti*, there is a genuine dispute of material fact whether a meeting of the minds occurred on the agreement to arbitrate. *Guidotti*, 716 F.3d at 767, 780. In *Guidotti*, since "the record was insufficient for the district court to make that threshold determination before compelling arbitration, [the Third Circuit] remanded the case for further fact discovery." *See Young*, 119 F.4th at (citing *Guidotti*, 716 F.3d at 779-81; *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329-30 (3d Cir. 2022) (remanding to the district court "to allow the parties to conduct discovery limited to the issue of arbitrability" because plaintiffs "brought forth sufficient facts to place the agreement to arbitrate in issue" (internal quotation marks omitted)); *Singh*, 939 F.3d at 210, 226-27 (affirming *Guidotti's* directive that limited discovery take place when a factual dispute arises and noting "Singh's submissions in opposition to the motion further place the issue in dispute—in his affidavit."); *Cf. Matczak v. Compass Grp. USA, Inc.*, No. 21-20415, 2022 WL 557880, at *3-4 (D.N.J. Feb. 24, 2022) (holding that because "there [was] no factual dispute that Plaintiff executed the Arbitration Agreement[,]. . .no further discovery on this question [was] required" and applying the Rule 56 standard); *Triola v. Dolgencorp, LLC*, No. 22-840, 2022 WL 16834579, at *5 (D.N.J. Nov. 9, 2022) (granting the motion to compel under the Rule 56 standard without discovery because the plaintiff "assented to the [a]greement" and "[t]here [was] no disputed issue of material fact related to the [a]greement's validity"). Here, like in *Guidotti*, the factual record needs to be further developed. *Guidotti*, 716 F.3d at 774, 776 (only when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, *or if the plaintiff. . .respond[s]. . .with additional facts sufficient to place the agreement*

*to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability"* (internal quotation marks omitted) (emphasis added)).

Ample case law in this Circuit instructs that a "motion to compel arbitration must be denied pending further development of the factual record," in scenarios such as this one. *See, e.g., Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate); *Hughes v. Kolaras*, No. 13-0057, 2013 WL 5797735, at *7 (D.N.J. Oct. 28, 2013) (same).

Accordingly, the Court will deny Defendants' motion without prejudice and will order the parties to conduct limited discovery on the issue of arbitrability. Thereafter, Defendants may file a renewed motion to compel arbitration, which the Court will review under the Rule 56 standard.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants motion to dismiss Plaintiff's Complaint and compel arbitration (ECF No. 24) is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

**DATED:** November 26th, 2024

JULIEN XAVIER NEALS
United States District Judge