**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARIA DEANGELIS, | Civil Action No. 23-3178 (JXN)(AME) |
| Plaintiff, | |
| v. | **OPINION** |
| CSI INTERNATIONAL, INC., *et al.*, | |
| Defendants. | |

**NEALS**, District Judge

Plaintiff Maria DeAngelis ("Plaintiff") can read and speak only Spanish. However, as a condition of working for Defendant CSI International, Inc. ("CSI"), Plaintiff signed an Arbitration Agreement written in English. After Plaintiff sued CSI and two supervisors[1] (collectively, "Defendants") for employment discrimination and whistleblower retaliation, Defendants moved to compel arbitration. (ECF No. 47.) Plaintiff opposed (ECF No. 48), and Defendants replied (ECF No. 49). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[2] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to compel arbitration and dismiss the Complaint (ECF No. 47) is **GRANTED**.

**I.    BACKGROUND**

**A.    Statement of Facts**

CSI is a Florida-based building services company with business in New Jersey. (Defs.' Statement of Undisputed Material Facts ("DSMF") ¶¶ 1–2.) Plaintiff, who sought to work at CSI,

---

[1] Adriana Pedrocino (improperly pled as Adriana Patrocinio), and Roxanna Daniel.
[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

attended two CSI onboarding meetings in August 2019. (*Id.* ¶ 3.) Four CSI management level employees attended the first onboarding meeting, including Cynthia Armenta ("Armenta") and Jose Alavena ("Alavena"). (*Id.* ¶¶ 5–7.) Armenta "spoke with everyone in Spanish during this meeting." (*Id.* ¶ 9.) Esperanza Chavez, a union shop steward, also attended. (*Id.* ¶¶ 10–13.)

During the meeting, CSI gave Plaintiff several documents to sign, including a certification to a consumer reporting agency, a Fair Credit Reporting Act disclosure and authorization statement, and a uniform agreement. (*Id.* ¶ 14.) The CSI employees present "translated the documents from English to Spanish for everyone." (*Id.* ¶ 16.) Plaintiff then asked Alavena to "help her understand the documents." (*Id.* ¶ 17.) With Alavena's assistance, Plaintiff signed each document. (*Id.* ¶¶ 18–20.)

At the second onboarding meeting, CSI asked Plaintiff and the other employees to fill out a four or five-page-long CSI job application ("Job Application"). (*Id.* ¶¶ 25–26.) Plaintiff completed and submitted the Job Application. (*Id.* ¶ 27.)

Page four of the Job Application advised Plaintiff of CSI's alternative dispute resolution ("ADR") policy, stating:

> If I am employed I understand that I will be subject to CSI ADR policy, which will obligate me to resolve disputes related to my employment through mandatory mediation and arbitration rather than through state or federal administrative agencies or procedures and court litigation. A copy of this policy and the agreement to abide by same (in both English and Spanish) is available for my inspection upon request during normal business hours, both prior to my completion of this application and prior to my acceptance of any offer of employment which may be made. If I am offered and accept employment with CSI, I understand that this policy will be explained to me in more detail, a copy will be provided to me as part of the orientation process, and I will be asked, as a condition of such employment, to sign an agreement to abide by this policy.

(Defs.' Ex. C ("Job Application") at 4, ECF No. 47-4.) Plaintiff signed this page. (DSMF ¶ 68.)

Plaintiff also signed CSI's Arbitration Agreement (*Id.* ¶ 71), which provided:

> I agree that if any employment-related disputes arise between [CSI], on the one hand, and me, on the other hand, I agree to be bound by the ADR Policy attached hereto, which provides for final and binding arbitration of any such employment-related disputes.
>
> . . . .
>
> I understand that this Agreement is a waiver of all my rights to a civil court action for all disputes relating to my employment, the terms and conditions of my employment and/or the termination of my employment whether brought by me or by CSI. Only an arbitrator, not a Judge or jury, will decide the dispute.
>
> . . . .
>
> I understand that I have the opportunity to review the ADR Policy and to ask questions regarding anything contained in the ADR Policy prior to my execution of this agreement.

(*See* Defs.' Ex. D ("Arbitration Agreement"), ECF No. 47-4 at *37–38.)

Correspondingly, CSI's ADR Policy set forth the following:

**WHO IS COVERED**

The ADR policy is mandatory for all disputes arising between employees and CSI except as specifically excluded by the ADR policy. Any disputes which arise and which are covered by the ADR policy must be submitted to final and binding resolution through the procedures of this ADR policy.

For parties covered by this ADR policy, alternative dispute resolution, including final and binding arbitration, is the exclusive means for resolving Covered Disputes . . . no other action may be brought in court or in any other forum and this policy effects a waiver of all rights to a civil court action for a Covered Dispute; only an arbitration, not a judge or jury, will decide the dispute.

. . . .

**COVERED DISPUTES**

Covered Disputes are defined to include any dispute arising out of or related to your employment, the terms and conditions of your employment and/or the termination of your employment based on, but not limited to, the following:
- Alleged violations of federal, state and/or local constitutions, statutes or regulations;
- Claims of unlawful harassment, discrimination, retaliation or wrongful termination that cannot be resolved by the parties [or during an investigation by an administrative agency (such as the federal Equal Employment Opportunity Commission or similar state and local agencies)]. Covered claims include by way of example, but are not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act,

the Age Discrimination in Employment Act of 1967, the Equal Pay Act, the Family and Medical Leave Act, similar state and local laws, or any other statutory or common law scheme prohibiting, among other things, discrimination or harassment because of race, color, age, religious creed, national origin, ancestry, disability, sexual orientation, gender identity and sex;

- Claims based on any purported breach of contract, including breach of the covenant of good faith and fair dealing;
- Claims of wrongful termination or constructive termination;
- Claims of unfair demotion, transfer, reduction in pay, or any other change in the terms and conditions of employment;
- Claims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or breaks, entitlement to waiting time penalties and/or other claims involving employee wages, including, but not limited to, claims brought under state or local wage payment laws, applicable wage orders, the Fair Labor Standards Act and any other statutory scheme governing wages or hours of work, whether under federal, state or local laws or ordinances;
  - o Claims based on any purported breach of duty arising in tort, including alleged violations of public policy and for emotional distress;
  - o Claims of defamation, pre and post-termination; and
  - o Any claim CSI may have against employees, regardless of the nature, arising out of the employment relationship.

. . . .

**FOR FURTHER INFORMATION**

If you have questions about anything contained in this ADR Policy, please contact CSI's Human Resources Manager.

(*See* Arbitration Agreement at *39–42.)

Plaintiff started working for CSI on September 1, 2019. (DSMF ¶ 69.)

**B.      Procedural History**

Plaintiff sued Defendants in New Jersey state court on May 5, 2023. (*See* Notice of Removal ¶ 1.) She alleges (1) disability discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*; (2) whistleblower retaliation and

4

termination, in violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.*; (3) a hostile work environment, in violation of NJLAD; (4) aiding and abetting a violation of NJLAD; (5) retaliation and termination, in violation of the Worker's Compensation Act, N.J.S.A. § 34:15-39.1, *et seq.*; and (6) wrongful termination, in violation of *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980). (*See* Notice of Removal Ex. A ("Compl."), ECF No. 1.)

Defendants timely removed to this Court[3] (*See* Notice of Removal) and later moved to compel arbitration and dismiss the Complaint. (*See* Fourth Mot. to Compel, ECF No. 47.) That motion went through several iterations. (*See* First Mot. to Compel, ECF No. 11; Second Mot. to Compel, ECF No. 24; Third Mot. to Compel, ECF No. 38.) The Court denied the first because Defendants did not identify the appropriate standard of review. (*See* Mar. 20, 2024 Text Order, ECF No. 23.) The Court denied the second motion because the Court concluded that discovery on the issue of arbitration was required, and that a renewed motion would be decided under the Rule 56 standard. (*See* Op., ECF No. 28.) The Court ordered limited discovery on arbitration. (*See* Order, ECF No. 29.) After limited discovery concluded, the Court denied the third motion because Defendants briefed their motion under the Rule 12(b)(6) standard, and because neither party complied with Local Civil Rule 56.1. (*See* Sept. 9, 2025 Text Order, ECF No. 44.)

Defendants filed this fourth motion to compel arbitration on October 6, 2025. (*See* Fourth Mot. to Compel.) Plaintiff opposed (Pl.'s Opp'n, ECF No. 48), and Defendants replied (Def.'s Reply, ECF No. 49).

Defendants argue that (1) the parties entered into a valid arbitration agreement and (2) all of Plaintiff's claims fall within that agreement. (*See* Defs.' Moving Br., ECF No. 47-1.) Plaintiff

---

[3] Defendants removed under 28 U.S.C. § 1331, asserting that the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 141, *et seq.*, preempted Plaintiff's claims. (*See* Notice of Removal.)

responds that she did not assent to the arbitration agreement—Plaintiff does not read or speak English, so she could not understand the essential terms of what she was agreeing to. (*See* Pl.'s Opp'n at 3–6.) Plaintiff also claims she was fraudulently induced into signing the arbitration agreement, and that she did so under duress. (*Id.* at 6–9.)

## II.   <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of" arbitration. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). Yet Court may not automatically grant a motion to compel arbitration. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Rather, the Court first "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* When it is apparent from "the face of a complaint, and documents relied upon in the complaint, that . . . a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (alteration in original) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)). Where, however, "the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue," the Court analyzes the motion to compel under the Rule 56 standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013).

Under the Rule 56 standard, the Court may grant a motion to compel arbitration only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of

the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of showing no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The Court may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. "All facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The non-moving party, however, must offer more than a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

## III.    DISCUSSION

### A.    Valid Agreement to Arbitrate

In determining whether there is a valid arbitration agreement, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The "fundamental elements of contract formation" are mutual assent, offer and acceptance, and consideration. *Fazio v. Altice USA*, 261 N.J. 90, 103 (2025) (quoting *Comprehensive Neurosurgical, P.C. v. Valley Hosp.*, 257 N.J. 33, 65 (2024)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese v.*

*U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014). "For there to be a meeting of the minds, parties to an arbitration contract must clearly and unambiguously understand the 'distinction between resolving a dispute in arbitration and in a judicial forum.'" *Fazio*, 261 N.J. at 103 (quoting *Atalese*, 219 N.J. at 442).

Though Plaintiff's signature appears on the Job Application and Arbitration Agreement (DSMF ¶¶ 27, 71; Pl.'s Statement of Undisputed Material Facts ("PSMF") ¶¶ 27, 71, ECF No. 47-2), Plaintiff argues she did not assent to arbitration because she could not read English and therefore did not understand what she was agreeing to. (Pl.'s Opp'n at 3–4.) While this argument has some intuitive appeal, a party who signs a contract "is conclusively presumed to understand and [assent] to its terms and legal effect." *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 674 (D.N.J. 2015) (quoting *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 353 (1992)). There is no exception for "where a party is ignorant of the language in which a contract is written." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008). "[T]he fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." *Id.* "Nevertheless, a narrow exception arises in the face of evidence that the contract resulted from fraud, duress, and/or misrepresentation." *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 674 (D.N.J. 2015).

Plaintiff argues (1) her signature was procured through fraud; (2) she signed the Arbitration Agreement under duress; and (3) the Arbitration Agreement is unconscionable.

### i.   *Fraud*

Plaintiff claims she was fraudulently induced into signing the Job Application and Arbitration Agreement. To state a claim for fraudulent inducement, Plaintiff must show: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity;

and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to [her] detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012).

Plaintiff argues she relied on Defendants' translation of her Job Application to her detriment. Missing, however, is any evidence that Defendants *misrepresented* the contents of the employment agreement to Plaintiff. (*See* Pl.'s Opp'n at 6–7.) At most, Plaintiff cites her own deposition testimony that certain documents were concealed from her, and urges the Court to imply the existence of fraud "based upon Plaintiff's testimony that [she] did not sign crucial components of the employment application." (*Id.* at 7.) Yet Plaintiff's "self-serving deposition testimony is insufficient to raise a genuine issue of material fact." *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011). And, although Plaintiff claimed someone else filled out portions of her Job Application (Pl.'s Dep. Tr. at 65:13–17, ECF No. 47-4), Plaintiff later testified that she signed both the Job Application and Arbitration Agreement. (*Id.* at 66:11–13, 89:17–24). Moreover, the bare fact that someone else assisted Plaintiff in filling out a Job Application neither relieves Plaintiff of her duty to understand the terms of the contract she entered, nor readily permits the Court to conclude that the terms of Plaintiff's contract were misrepresented. To the contrary, the mere assertion that Defendants did not point out the arbitration provision to Plaintiff is not evidence of fraud; no such "obligation exists where the provision is not hidden." *Young v. Prudential Ins. Co. of Am.*, 297 N.J. Super. 605, 619 (App. Div. 1997).

Because a party cannot fashion a genuine issue of material fact out of "[b]are assertions, conclusory allegations, or suspicions," Plaintiff fails to raise a genuine issue of material fact as to whether Defendants fraudulently induced her to sign the Arbitration Agreement. *Nitkin v. Main*

*Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018)).

### ii.    Duress

Plaintiff next argues she did not assent to the Arbitration Agreement because she signed it under duress. According to Plaintiff, she only signed the Arbitration Agreement because CSI told Plaintiff that she could not work for CSI if she did not sign the Arbitration Agreement immediately. (*See* Pl.'s Opp'n at 7.)

To invalidate a contract for economic duress, the party alleging duress must show (1) he or she "has been the victim of a wrongful or unlawful act or threat"; and (2) that "act or threat must be one which deprives the victim of his [or her] unfettered will." *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 93 N.J. 153, 176 (1983) (quoting 13 Samuel Williston, *A Treatise on the Law of Contracts* § 1617, at 704 (3d ed. 1970)). Duress turns on "the wrongfulness of the pressure exerted." *Id.* at 177. Wrongful conduct need not be illegal. *Id.* Immoral or inequitable conduct suffices. *Id.* And, while duress is a fact-sensitive inquiry,

> Where there is adequacy of consideration, there is generally no duress. . . . Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of "driving a hard bargain." Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion. . . . Under this rule, the party exerting pressure is scored only for that for which he alone is responsible.

*Id.* (quoting Williston, *supra*, § 1617, at 708). Therefore, "the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate statutory claims." *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 264 (App. Div. 2000).

Plaintiff alleges she was pressured into signing the Arbitration Agreement because CSI told her and other prospective employees "that if they did not sign the paperwork they could not

10

go to work." (Pl.'s Opp'n at 7.) Plaintiff notes she had worked as a building cleaner for more than twenty years, and "was under extreme duress to sign the documents immediately because if she did not, she would lose her job." (*Id.*) While the Court understands the pressure Plaintiff faced, it reflects, at most, the ordinary economic pressure job seekers experience. Plaintiff wanted a job. CSI offered her a job, subject to an Arbitration Agreement. She signed the Arbitration Agreement and began working for CSI. That is not, by itself, wrongful pressure. Therefore, Plaintiff has not demonstrated that the Arbitration Agreement is voidable for duress.

### iii.     *Unconscionability*

Finally, Plaintiff argues the Court should void the Arbitration Agreement as unconscionable. Courts "may refuse to enforce contracts, or discrete contract provisions, that are unconscionable." *Rodriguez v. Raymours Furniture Co.*, 225 N.J. 343, 366 (2016). Unconscionability has procedural and substantive components. *Id.* Procedural unconscionability refers to unfairness in the formation of the contract and "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* (quoting *Muhammad v. Cnty. Bank of Rehoboth Beach*, 189 N.J. 1, 15 (2006)). Substantive unconscionability means the contract is "so one-sided as to shock the court's conscience." *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 565 (Ch. Div. 2002). New Jersey courts employ "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006).

The Court notes that a take-it-or-leave-it employment agreement, like Plaintiff's, is a contract of adhesion. *Rodriguez*, 225 N.J. at 366. Contracts of adhesion necessarily involve some

11

level of procedural unconscionability. *Id.* at 366–67. Yet contracts of adhesion are not "automatically void." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 89 (2002). Rather, New Jersey courts examine "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992).

### a.   Procedural Unconscionability

Plaintiff emphasizes that she could not read English, and therefore, could not understand what she was signing, and had no opportunity to negotiate the terms of her employment—she could either submit to arbitration or walk away.

"Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Martindale*, 173 N.J. at 90. Instead, a procedurally unconscionable arbitration agreement involves "circumstances substantially more egregious than the ordinary economic pressure faced by every employee who needs the job." *Young*, 297 N.J. Super. at 621. Plaintiff, however, has not shown the presence of substantially egregious circumstances. As discussed above, Plaintiff's assent to the Job Application and Arbitration Agreement reflected, at most, the ordinary economic pressure job seekers face. To be sure, Plaintiff could not read the language in which her agreements were written. But it is undisputed that, at her first onboarding, a CSI employee translated into Spanish all the documents she signed, including the Job Application. (DSMF ¶¶ 16–20; PSMF ¶¶ 16–20.) The Job Application stated, in clear and conspicuous terms, that if Plaintiff worked for CSI, she could only bring claims against Defendants in arbitration, not in a court. (*See* Job Application at 4.) At a minimum, therefore, Plaintiff was on notice of the Arbitration Agreement at the time of

12

her first onboarding and had the opportunity to ask further questions. In sum, the Court finds the circumstances do not reflect overwhelming procedural unconscionability and turns to the substance of the Arbitration Agreement.

### b.    Substantive Unconscionability

Plaintiff argues the Arbitration Agreement, writ large, is substantively unconscionable because it takes away Plaintiff's ability to litigate claims against Defendants in court. Plaintiff also argues the six-month time limit on bringing claims to arbitration is unconscionable.

An arbitration provision is not, by and of itself, "substantively unconscionable where it 'does not alter or limit the rights and remedies available to a party in the arbitral forum.'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (cleaned up) (quoting *Edwards v. HOVENSA, LLC,* 497 F.3d 355, 364 (3d Cir. 2007)). In other words, the mere fact that an arbitration provision prevents Plaintiff from bringing claims to court is not unconscionable. Therefore, the Court does not find the arbitration provision, in and of itself, unconscionable.

The Court does not reach the same conclusion with respect to the Arbitration Agreement's six-month statute of limitations. The Arbitration Agreement provides:

> If a Covered Dispute should arise and you wish to initiate these procedures, you must deliver a written request for alternative dispute resolution to CSI's Human Resources Manager within six (6) months after the occurrence of the event giving rise to the Covered Dispute. CSI will deliver a written request to you for any claim it may wish to assert. If a request for alternative dispute resolution is not submitted timely with respect to any Covered Dispute, the claim will be deemed to have been waived and forever released.

(Arbitration Agreement at *41.)

The Court must consider "the public interests affected by the contract" in evaluating substantive unconscionability. *Rudbart*, 127 N.J. at 356. The public interests affected by the Arbitration Agreement's six-month statute of limitations lead the Court to conclude it is

unconscionable. Specifically, the New Jersey Supreme Court has held that "the contractual shortening of the LAD's two-year limitations period for a private action is contrary to the public policy expressed in the LAD." *Rodriguez*, 225 N.J. at 364 (invalidating contractual statute of limitations as contrary to NJLAD). That is because "[t]he private right of action authorized by the LAD advances and fulfills the private and legislatively declared public interest in the elimination of discrimination." *Id.* at 361. Therefore, "the anti-discrimination public policy to be fulfilled through LAD claims may not be contractually curtailed by a limitation on the time for such actions." *Id.* at 364–65. The Court, accordingly, finds the Arbitration Agreement's statute of limitations unconscionable to the extent it is shorter than the NJLAD's two-year limitations period. *See Shammout v. MSX Int'l RNS, LLC*, No. 23-21563, 2025 WL 957419, at *6 (D.N.J. Mar. 31, 2025) (finding shorter contractual limitations period for NJLAD claims unconscionable).

The Court reaches the same conclusion as to the six-month limitation on Plaintiff's CEPA claim. CEPA is "remedial legislation and should be viewed 'as a reaffirmation of this state's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections and a recognition by the Legislature of a preexisting common-law tort cause of action for such retaliatory discharge.'" *Young v. Schering Corp.*, 141 N.J. 16, 26 (1995) (quoting *LePore v. National Tool & Mfg. Co.*, 115 N.J. 226, 228 (1989)). Therefore, a contractual provision is unconscionable where it "violates the public policy embodied in CEPA." *Hampton v. ADT, LLC*, No. A-172-20, 2021 WL 1713295, at *7 (N.J. Super. Ct. App. Div. Apr. 30, 2021). "One purpose of CEPA is to make it easier, not harder, for a former employee to prevail on a retaliatory discharge claim by allowing the employee to report the employer's illegal conduct to a supervisor or public body." *Young*, 141 N.J. at 26. A contractual provision shortening CEPA's one-year statute of limitations would make it harder, not easier, for a former employee to

prevail on a whistleblower retaliation claim, and violate the public policy CEPA embodies. Here, the Arbitration Agreement shortens the limitations period for all claims, including CEPA claims, to six months. Because shortening CEPA's statute of limitations violates public policy, the Arbitration Agreement's six-month statute of limitations is substantively unconscionable.[4]

Having concluded the Arbitration Agreement's six-month statute of limitations is unenforceable as to Plaintiff's claims, the Court must consider whether to sever it. "Courts can sever an invalid provision of a contract unless striking the illegal provision 'defeats the primary purpose of the contract.'" *Lahoud v. Anthony & Sylvan Corp.*, 481 N.J. Super. 29, 46 (App. Div. 2025) (quoting *Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10, 33 (1992)). Put differently, the Court "must determine whether the unenforceability of the provision renders the remainder of the contract unenforceable." *Id.* at 46–47 (cleaned up) (quoting *Jacob*, 128 N.J. at 32).

The Arbitration Agreement has a severability clause (Arbitration Agreement at *42), which is "indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision." *Arafa v. Health Express Corp.*, 243 N.J. 147, 169 n.2 (2020). Reading the Arbitration Agreement as a whole, the Court concludes that the contract's central purpose is to arbitrate disputes, not to impose a six-month statute of limitations on arbitrable claims. Striking the six-month statute of limitations from the Arbitration Agreement does not destroy the primary goal of the agreement. Therefore, the Court severs the six-month statute of limitations from the Arbitration Agreement and concludes there is a valid agreement to arbitrate.

---

[4] Defendants cite *Pyo v. Wicked Fashions, Inc.* for the proposition that courts within this District have upheld contractual statutes of limitations that were shorter than NJLAD's statute of limitations. No. 09-2422, 2010 WL 1380982, at *9–10 (D.N.J. Mar. 31, 2010). *Pyo* is inapposite because it predates *Rodriguez* and involved a contractual statute of limitations that was twice as long as the one at issue here.

**B.     Scope of the Agreement**

Having found that there is a valid arbitration agreement, the Court turns to whether Plaintiff's claims fall within its scope. The Court concludes that they do.

The Arbitration Agreement covers "any dispute arising out of or related to [Plaintiff's] employment," including "[a]lleged violations of . . . state . . . statutes," and "[c]laims of unlawful harassment, discrimination, retaliation, or wrongful termination." (Arbitration Agreement at *39–40.) Plaintiff's disputes arise out of her employment with CSI and she raises claims under NJLAD, CEPA, and CEPA's common law analogue. Those claims plainly fall within the Arbitration Agreement's scope. Therefore, the Court compels the parties to arbitration and dismisses the Complaint without prejudice.[5]

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration (ECF No. 47) is **GRANTED**. The Court severs the Arbitration Agreement's statute of limitations, orders the parties to arbitration, and dismisses the Complaint (ECF No. 1-1) without prejudice. An appropriate Order accompanies this Opinion.

**DATED: 5/4/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

---

[5] Dismissal is the appropriate course where neither party requests a stay pending arbitration. *See Smith-Bishop v. Experian Info. Sols., Inc.*, No. 24-408, 2025 WL 635329, at *9 n.2 (D.N.J. Feb. 27, 2025); *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2024 WL 3159316, at *6 n.7 (D.N.J. June 25, 2024); *Davis v. Ally Fin. Inc.*, No. 23-22897, 2024 WL 2239144, at *4 n.4 (D.N.J. May 17, 2024); *Taylor v. CDS Advantage Sols.*, No. 20-2803, 2024 WL 1048124, at *10 n.8 (D.N.J. Mar. 9, 2024).